UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SAGINAW CHIPPEWA INDIAN TRIBE OF MICHIGAN, | ) ) ) |
| | ) Case No. 11-cv-14652 |
| Plaintiff, | ) |
| v. | ) Honorable Thomas |
| | ) Ludington |
| NATIONAL LABOR RELATIONS BOARD and in their official capacities as Members of the Board, MARK G. PEARCE, Chairman, CRAIG BECKER, and BRIAN HAYES. | ) ) Magistrate Judge ) Charles E. Binder ) |
| | ) |
| Defendant. | ) |
| | ) |

**NATIONAL LABOR RELATIONS BOARD, ET AL.'S BRIEF IN SUPPORT OF
MOTION TO DISMISS FOR LACKOF SUBJECT MATTER JURISDICTION
AND
OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING
ORDER AND/OR PRELIMINARY INJUNCTION**

## STATEMENT OF ISSUE

Whether the Court should dismiss the instant case for lack of subject matter jurisdiction over Plaintiff's attack on the National Labor Relations Board's jurisdiction to conduct an ongoing unfair labor practice proceeding.  Pursuant to Local Rule 7.1(a)(2), counsel for Defendants conferred with counsel for Plaintiff and requested, but did not obtain, concurrence in the relief sought.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41 (1938); *Detroit Newspaper Agency v. NLRB*, 286 F.3d 391 (6th Cir. 2002); *Little River Band of Ottawa Indians v. NLRB*, 747 F. Supp. 2d 872 (W.D. Mich. 2010).

## INTRODUCTION

Over 70 years ago, in *Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41 (1938), the Supreme Court held that United States district courts lack subject-matter jurisdiction to review or enjoin the processing of an unfair labor practice case by the National Labor Relations Board. Instead, a party seeking judicial review of an unfair labor practice case must first exhaust administrative remedies before the Board and, thereafter, may petition an appropriate court of appeals for review of a final Board order.  *See Detroit Newspaper Agency v. NLRB*, 286 F.3d 391, 401 (6th Cir. 2002).  The Plaintiff here, the Saginaw Chippewa Indian Tribe of Michigan, is defending against an administrative unfair labor practice complaint and can show no reason why its attempt to circumvent the exhaustion requirement should succeed where others have failed. Additionally, as is made clear in *Myers*, the Tribe has failed to demonstrate irreparable harm, and has not satisfied any of the other requirements for injunctive relief.  Accordingly, because the rule established in *Myers* controls this case, rather than Tenth Circuit case law relied upon by

Plaintiff, the Motion for injunctive relief should be denied, and the Complaint dismissed for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## THE PARTIES

The National Labor Relations Board ("NLRB," "the Board," or "the Agency") is an independent federal agency created by Congress in 1935 to administer the National Labor Relations Act ("NLRA" or "the Act"). The Agency's primary duties are to prevent and remedy "unfair labor practices," 29 U.S.C. § 158, and to conduct union representation elections, *id.* § 159. The NLRA separates the Agency's prosecutorial and adjudicatory functions. Section 3(d) establishes the General Counsel and vests him with "final authority, on behalf of the Board, in respect of the investigation of [unfair labor practice] charges and issuance of complaints . . . , and in respect of the prosecution of such complaints before the Board . . . ." *Id.* § 153(d).[1] In addition, Section 3(a) of the Act, *id.* § 153(a), creates within the Agency a five-member Board, which is empowered by Section 10(a), *id.* § 160(a), to adjudicate unfair labor practice complaints brought by the General Counsel, and by Section 9, *id.* § 159, to process petitions for union representation elections and to certify the results of such elections.[2]

The Saginaw Chippewa Indian Tribe of Michigan ("the Tribe") is a federally recognized Indian tribe located in Michigan. (Compl. ¶¶ 1-2.) Pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721, the Tribe conducts gaming activities in the Soaring Eagle Casino and Resort ("the Casino"). (Compl. p. 2.)

---

[1] The General Counsel delegated this authority to the Agency's Regional Directors.

[2] "The Board" will refer solely to the Section 3(a) collegial body. The administrative agency as an institutional whole will be referred to as "the NLRB" or "the Agency."

## FACTUAL BACKGROUND

On April 1, 2011, the International Union, United Automobile, Aerospace & Agriculture Implement Workers of America filed an unfair labor practice charge against the Tribe with Region 7 of the NLRB.  (NLRB Exhibit 1.)  The charge identifies the Casino as an "employer" whose principal product or service is "casino gaming."  (*Id.*)[3]  The charge alleges that on or about November 15, 2010, the Casino violated Section 8(a)(1) and (a)(3) of the Act, 29 U.S.C. § 158(a)(1) & (3), when it terminated Susan Lewis, a union supporter, for violating the Tribe's no solicitation policy (Compl. p. 4).

Following the investigation, the Regional Director issued an administrative complaint on September 13, 2011.  The Complaint alleges that the Tribe's no solicitation policy, as applied to Casino employees, violates Section 8(a)(1) of the Act by interfering with employees in the exercise of their rights under Section 7 of the Act and, further, that the Tribe's suspension and termination of Lewis constituted unlawful discrimination in violation of Section 8(a)(1) and (3) of the Act, 29 U.S.C. §§ 157; 158(a)(1) & (3).  (Compl. p. 4; Pl.'s Br. Ex. 9.)

On September 22, 2011, the Tribe filed an "Answer by Special Appearance" contesting the Agency's jurisdiction over the Tribe.  (Compl. p. 4; Pl.'s Br. Ex. 10.)  On October 3, 2011, the Tribe filed an Amended Answer admitting, denying, or explaining the Complaint allegations. (Pl.'s Br. 12.)  The NLRB had scheduled this matter for trial by an administrative law judge on November 2, 2011. (Compl. p. 5.)

On October 21, 2011, the Tribe filed the instant Complaint, as well as a motion seeking an injunction.  The Complaint alleges that the Tribe faces "immediate and irreparable harm

---

[3] Section 2(2) of the NLRA defines an "employer" but makes no mention to Indian Tribes. *Compare* 42 U.S.C. § 2000e(b) (stating that "an Indian tribe" is not a title VII "employer"); *id.* § 12111(5)(B)(i) (same with respect to the Americans with Disabilities Act).

from the Board's *ultra vires* attempt to apply the NLRA to the Tribe in the absence of express congressional authorization," with "no adequate remedy at law" (*Id.* ¶¶ 36, 38.); that "the Board's action would violate the Tribe's rights under IGRA, the Compact and the Tribe's laws . . . , and would subject the Tribe to a proceeding over which the Board lacks subject matter jurisdiction" (*Id.* ¶ 49.); that the "Board's action would, *inter alia*, restrict the regulation and review of key employees under IGRA, the Compact, and the Tribe's laws" (*Id.* ¶ 54.); and that pursuant to "the federal trust responsibility, the treaties . . . , and EO 13,175" the Board was required to consult with the Tribe before deciding to assert jurisdiction."  (*Id.* ¶¶ 62, 64.)  The Complaint requests declaratory and injunctive relief.  (*Id.* p. 34.)

Four days later, on October 25, 2011, in a conference call with the NLRB administrative law judge and other parties to the administrative proceeding, the Tribe for the first time requested that the administrative hearing be postponed.  Counsel for the General Counsel agreed to postpone the hearing, and it now rescheduled for December 14, 2011.  (NLRB Exhibit 2.)

**SUMMARY OF ARGUMENT**

The sole issue before this Court is whether the Tribe can effectively bypass the NLRA's congressionally-mandated judicial review procedures by launching a preemptive attack on the Agency's unfair labor practice proceeding in district court.  To be clear, the instant case is not about whether the Agency can assert jurisdiction over a Casino operated by the Saginaw Tribe.  That question—not yet presented to or decided by the Board in this case—will ultimately be decided by a federal appellate court.[4]  Jurisdiction is not conferred on the district court merely

---

[4] As explained below, the Board's orders are not self-enforcing.  If a party found guilty of an unfair labor practice does not comply with a Board order, the Board must seek enforcement pursuant to Section 10(e) of the NLRA, 29 U.S.C. 160(e).  Alternatively, pursuant to Section 10(f) (29 U.S.C. 160(f)), a party aggrieved by a final Board order can  petition directly to a Court of Appeals for review before there is any compulsory force to the Board's order.

because the Tribe may ultimately be correct about the merits of the underlying proceeding—that is, that the Board cannot assert jurisdiction over the Tribe as an employer.

The Supreme Court's decision in *Myers*, as well as Sixth Circuit and out-of-circuit precedent, preclude this Court from exercising subject-matter jurisdiction over the instant case. Those decisions recognize that the NLRA's statutory review procedures, in particular Section 10(f), deny district courts authority to hear challenges to the commencement, prosecution, or adjudication of unfair labor practice proceedings.  Section 10(f) strictly requires parties to exhaust administrative remedies before the Board and an appropriate court of appeals.  This rule was applied by the District Court for the Western District of Michigan, in *Little River Band of Ottawa Indians v. NLRB*, 747 F. Supp. 2d 872, 886 (W.D. Mich. 2010), to dismiss a very similar suit by a tribe alleging harm to its sovereignty and seeking to enjoin a NLRB unfair labor practice investigation of its casino.  In sum, the Tribe's reliance on general jurisdictional statutes to establish jurisdiction is misplaced, and the Supreme Court has determined that being required to exhaust administrative remedies by participating in an NLRB hearing does not constitute irreparable harm.  Accordingly, injunctive relief should be denied, and the Complaint must be dismissed for lack of subject-matter jurisdiction.  The Court also may not hear this suit because Congress has not consented that the NLRB, an agency of the United States, be sued in these circumstances.  The Agency is thus immune as sovereign.

## ARGUMENT

"When a defendant moves to dismiss for lack of subject-matter jurisdiction 'the plaintiff has the burden of proving jurisdiction in order to survive the motion.'"  *Wisecarver v. Moore*, 489 F.3d 747, 749 (6th Cir. 2007) (quoting *Moir v. Greater Cleveland*, 895 F.2d 266, 269 (6th Cir. 1990)).  The Tribe cannot sustain this burden, and this case should be dismissed.

I.     The NLRA Exclusively Vests the Courts of Appeals with Authority to Review "All Questions of the Jurisdiction of the Board" in Unfair Labor Practice Proceedings.

The jurisdiction of federal district courts is limited to those subjects over which Congress has granted jurisdiction by statute.  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982); *Goldsmith v. Sutherland*, 426 F.2d 1395, 1398 (6th Cir. 1970).  The Tribe asserts two separate bases for jurisdiction—general federal question jurisdiction under 28 U.S.C. § 1331 and jurisdiction over "all civil actions[] brought by any Indian tribe or band" that raise a federal question under 28 U.S.C. § 1362.  (Compl. ¶ 14; Pl.'s Br. p. 4.)  However, the Tribe's reliance on these provisions is misplaced because the NLRA's exclusive review procedures divest all district courts of jurisdiction to consider the Tribe's claims.  Instead, the Tribe's challenge to the NLRB's jurisdiction over the underlying unfair labor practice matter must be presented to the Board in the first instance, and thereafter may be raised in an appropriate court of appeals on judicial review of a final Board order.

A.     Congress did not grant district courts jurisdiction over NLRA unfair labor practice proceedings.  Rather, Congress gave the Board exclusive authority to prevent "any person" from engaging in unfair labor practices, with review jurisdiction lodged in the federal circuit courts. 29 U.S.C. § 160(a); *see Mayer v. Ordman*, 391 F.2d 889, 891 (6th Cir. 1968) (per curiam). Section 10(f) of the NLRA, 29 U.S.C. § 160(f), describes the procedure that aggrieved persons must follow to obtain judicial review in unfair labor practice cases.  Pursuant to that provision, the *only* Agency decisions subject to judicial review are "final order[s] of the Board," and then, only in an appropriate "United States court of appeals."  *Id.*  Congress designed Section 10(f) to give aggrieved parties "a full, expeditious, and exclusive method of review . . . after a final order is made.  Until such final order is made, the party is not injured, and cannot be heard to complain."  H.R. Rep. No. 74-1147, at 24 (1935) (quoted in *Myers*, 303 U.S. at 48 n.5).

The Supreme Court's decision in *Myers* applies directly to the instant case and makes clear the preclusive effect that Section 10(f) has on efforts to enmesh district courts in disputes concerning Agency jurisdiction over pending unfair labor practice cases.  In *Myers*, a putative NLRA employer against whom an unfair labor practice complaint had issued sought to enjoin an NLRB administrative hearing before a trial examiner.  *Id.* at 46.  Similar to the Tribe's position here, the company there argued that its operations fell outside the Act's lawful scope and that the Agency had acted in excess of its jurisdiction.  *Id.* at 47.  Indeed, the company maintained that application of the NLRA to its activities would "violate the Federal Constitution."  *Id.* at 46.  The company further argued that the holding of hearings "would result in irreparable damage to the corporation."  *Id.* at 47-48.  The district court found merit to these arguments, issued a preliminary injunction, and the First Circuit affirmed.  *Id.* at 46-47.

On review, the Supreme Court reversed, emphatically rejecting the proposition that district courts have power to consider challenges to Agency jurisdiction over unfair labor practice cases.  The Court held that "[t]he District Court is without jurisdiction to enjoin hearings because the power 'to prevent any person from engaging in any unfair labor practice affecting commerce' has been vested by Congress in the Board and the Circuit Court of Appeals."  *Id.* at 48.  Because Board orders are not self-enforcing, the Court determined that the review procedures set forth by Section 10(f) provide "an adequate opportunity to secure judicial protection against possible illegal action on the part of the Board."  *Id.*  Indeed, the *Myers* Court emphasized the comprehensive nature of appellate court review available at the conclusion of Agency unfair labor practice cases:  "'*[A]ll questions of the jurisdiction of the Board and the regularity of its proceedings and all questions of constitutional right or statutory authority* are open to examination by the court.'"  *Id.* at 49 (emphasis added) (citation omitted).  For these

reasons, district court jurisdiction over matters arising in unfair labor practice cases was found to be incompatible with Congress's statutory design.

B.      *Myers* thus made clear the bedrock principle that decides this case, and that recently decided *Little River*, 747 F. Supp. 2d at 876, namely, that a charged party in an unfair labor practice case cannot bypass the NLRA's review provisions by challenging the Agency's jurisdiction in an ancillary district court action.  Rather, pursuant to Section 10(f), an attack on Agency jurisdiction must be advanced in an appropriate court of appeals only after the NLRB's administrative proceedings have culminated in a final Board order.  All defenses based on sovereignty, treaties, or other federal laws will be considered by the Board and reviewed by either the Sixth Circuit or the D.C. Circuit.

Since *Myers* was decided, the Supreme Court, this circuit, and others, repeatedly have rejected attempts by district courts to enjoin the NLRB from investigating, litigating, or adjudicating unfair labor practice cases.  *See Newport News Shipbuilding & Dry Dock Co. v. Schauffler*, 303 U.S. 54, 56-57 (1938); *Detroit Newspaper*, 286 F.3d at 401; *Grutka v. Barbour*, 549 F.2d 5, 7 & 10 (7th Cir.), *cert. denied*, 431 U.S. 908 (1977) (exhaustion required for Catholic Bishop asserting that First Amendment barred application of NLRA to Catholic schools); *Goethe House New York, German Cultural Ctr. v. NLRB*, 869 F.2d 75, 80 (2d Cir. 1989) (exhaustion required for party claiming exemption for being regulated by German Government).[5]  As concluded recently by the district court in *Little River*, "[t]o the extent [the tribal] plaintiff's right to relief depends on resolution of a substantial question of federal law,

---

[5] *See also Boyles Galvanizing Co. of Colo. v. Waers*, 291 F.2d 791, 792 (10th Cir. 1961); *Amerco v. NLRB*, 458 F.3d 883, 884 (9th Cir. 2006); *NLRB v. Interstate Dress Carriers, Inc.*, 610 F.2d 99, 107 (3d Cir. 1979); *J.P. Stevens Emps. Educ. Comm. v. NLRB*, 582 F.2d 326, 328 (4th Cir. 1978); *United Aircraft Corp. v. McCulloch*, 365 F.2d 960, 960 (D.C. Cir. 1966); *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 671 (5th Cir. 1966).

namely, the NLRB's exercise of jurisdiction over it, that question is properly decided by the NLRB in the first instance, then the court of appeals. This Court lacks jurisdiction to prevent the NLRB from proceeding on the charge that plaintiff is engaged in an unfair labor practice."  747 F. Supp. 2d at 890.[6]

II.     Because Neither the General Jurisdictional Statutes Nor the Inapposite Cases Cited by the Tribe Supersede the NLRA's Specific Review Procedures, the Tribe Has Failed to Prove That Subject Matter Jurisdiction Exists

The Tribe seeks to satisfy its burden of proving district court jurisdiction by relying upon two general jurisdictional statutes, 28 U.S.C. §§ 1331 and 1362, and invoking for its cause of action the Supremacy Clause of the Constitution, the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721, federal common law, and treaties to satisfy those jurisdictional statutes. (Compl. ¶ 14; Pl.'s Br. p. 4.)  However, none of these support jurisdiction in this case over unfair labor practice matters.

A.  The general jurisdiction provisions of  28 U.S.C. §§ 1331 and 1362 cannot override Section 10(f)'s specific grant of exclusive review to the courts of appeals, and therefore fail to establish the existence of subject-matter jurisdiction in this case.  Section 1331 gives district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Section 1362 of the same title similarly provides district courts with "original jurisdiction of all civil actions . . . aris[ing] under the Constitution, laws, or treaties of the United States" when brought by a federally recognized Indian tribe. "Section 1362 was passed in 1966 in order to give Indian tribes access to federal court on federal issues without regard to the $10,000 amount-in-controversy requirement then included in 28 U.S.C. § 1331, the general

_____

[6] The Little River Band did not appeal.  Instead, the Band is challenging the Board's jurisdiction in the pending Agency proceeding.  The parties have filed a Joint Stipulation of Facts and are awaiting a briefing schedule.

federal question jurisdictional statute." *Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 561 n.10 (1983); *see also Oneida Indian Tribe v. Cnty. of Oneida*, 464 F.2d 916, 920 n.4 (2d Cir. 1972) (Friendly, J.) (the purpose of section 1362 was to overrule a Ninth Circuit case "involv[ing] a claim that would have been assertable under § 1331 but for the requirement of jurisdictional amount"), *rev'd on other grounds*, 414 U.S. 661 (1974).

Since 1980, when Congress repealed section 1331's amount-in-controversy requirement, the jurisdictional scope of section 1362 has been, at least on its face, coextensive with section 1331 in suits brought by Indian tribes. "What is striking about this most unremarkable statute [i.e., section 1362] is its similarity to any number of other grants of jurisdiction to district courts to hear federal question claims." *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 783 (1991). Indeed, courts have noticed this similarity and have classified both section 1331 and 1362 as general jurisdictional statutes.[7]

General jurisdictional statutes like sections 1331 and 1362 provide no exception to the long-settled limitations on judicial authority over NLRB proceedings. When Congress elects to withhold jurisdiction from the district courts, they are divested of jurisdiction because "[a] general statute does not confer jurisdiction when an applicable regulatory statute precludes it." *Bd. of Trs. of Mem'l Hosp. v. NLRB*, 523 F.2d 845, 846 (10th Cir. 1975). *See Louisville & Nashville R.R. Co. v. Donovan*, 713 F.2d 1243, 1245 (6th Cir. 1983) (rejecting reliance on Sections 1331, 1337, and 1361 because "when Congress designates a forum for judicial review of administrative action, that forum is exclusive").

Such preclusion of jurisdiction was also applied recently in *Little River*, where the court rejected a Tribe's reliance on both Sections 1331 and 1362 as bases for jurisdiction to enjoin an

NLRB proceeding.  747 F. Supp. 2d at 882-84.  By this same reasoning, the Tribe's reliance on these general jurisdictional statutes here cannot surmount the NLRA's specific review procedures, which exclusively vest judicial review over NLRB unfair labor practice proceedings in Congress's "designated forum"—that is, the federal courts of appeals.

B.  The Tribe's assertion that this case arises under the Supremacy Clause falls flat. The Supremacy Clause grants federal law and treaties a superior status to state law.  U.S. Const. art. 4, cl. II; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983).  The instant case involves the relationship between federal and tribal law.  The Supremacy Clause does not speak to that issue.  The Tribe has not and can not find case law to support its reliance upon the Supremacy Clause in these circumstances.

C.  The IGRA also does not form a basis for jurisdiction here.  That statute regulates tribal gaming activities.  It does not address the force of the NLRA over such gaming enterprises, the issue with which the Board is concerned.  *See San Manuel Indian Bingo & Casino*, 475 F.3d 1306, 1317 (D.C. Cir. 2007) (Congress did not "enact[] a comprehensive scheme governing labor relations at Indian casinos" and there is "no indication that Congress intended to limit the scope of the NLRA when it enacted IGRA").   Indeed, according to the IGRA, one of the only three reasons the Secretary of the Interior may disapprove a tribal-state compact under the IGRA is if the compact violates "any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands."  25 U.S.C. § 2710(d)(8)(B).  This provision suggests that the IGRA was not intended to frustrate the application of other federal laws such as the NLRA.  Not surprisingly, the Tribe's Complaint acknowledges that its Charter states that tribal gaming is

---

[7] *See Miami Tribe v. United States,* 198 Fed. Appx. 686, 691 (10th Cir. 2006) (section 1331 and 1362); *S. Delta Water Agency v. United States*, 767 F.2d 531, 543 (9th Cir. 1985) (section 1362). (same).

"regulated and controlled by the Tribe pursuant to tribal and federal law . . ." which presumably could include the NLRA.  (Compl. ¶ 6.)

D.  The Tribe further fails to advance its case by its reliance on federal common law under *Nat'l Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845, 850-53 (1985) (Compl. ¶ 14). There, the Supreme Court required the plaintiff school district to exhaust tribal court remedies before seeking in federal court to enjoin an injured schoolboy from executing on a default judgment against the school district in Indian tribal court.  *Id.* at 847, 855-56.  The Court commented that the "existence and extent" of the tribal court's jurisdiction would require a careful examination of tribal sovereignty and the extent to which that sovereignty has been altered, divested, or diminished, but the analysis should be conducted "in the first instance in the Tribal Court itself."  *Id.* at 856.  This case thus supports the Board's argument that, like the Tribal Court, the Board should determine its jurisdiction "in the first instance."

E.  Finally, the Tribe contends that the federal district court may assert jurisdiction because this case arises under treaties between the United States and the Saginaw Tribe. (Compl. ¶ 14.)  As with its claim under the IGRA, however, the Tribe's reliance on treaties is a defense to application of the NLRA.  As a basis for this Court's jurisdiction, treaties are no more availing than was the U.S. Constitution to the Catholic Church in the Seventh Circuit's decision in *Grutka*, 549 F.2d at 9, where the court required the Church to exhaust administrative remedies notwithstanding its claim that such exhaustion infringed First Amendment rights.  That is, *Myers* and its progeny require that the IGRA and the Tribe's treaties be asserted pursuant to the procedures codified under the NLRA, which provide for immediate judicial review, if necessary, after adjudication before the Board.  Moreover, it is not at all clear that the treaties relied upon by the Tribe preclude application of the NLRA, as courts have decided to apply federal statutes to

tribal entities, despite tribal claims that similar land exclusion language precluded application of the federal statute.  *See, e.g., Dep't of Labor v. OSHRC*, 935 F.2d 182, 184-86 (9th Cir. 1991).  Again, a federal appellate court will have a chance to determine  such issues if the Board issues a final order asserting jurisdiction.

III.    Binding Supreme Court Precedent Holds that Participation in an Administrative
        Proceeding Before the NLRB Does Not Constitute Irreparable Harm, Nor Does the
        Saginaw Tribe Meet Any Other Criteria for Preliminary Injunctive Relief

In *Myers*, the Supreme Court firmly rejected the idea that participation in NLRB administrative proceedings, before securing appellate court review pursuant to NLRA Section 10(f), constitutes irreparable harm:

> Obviously, the rules requiring exhaustion of the administrative remedy cannot be
> circumvented by asserting that the charge on which the complaint rests is groundless and
> that the mere holding of the prescribed administrative hearing would result in irreparable
> damage. Lawsuits also often prove to have been groundless; but no way has been
> discovered of relieving a defendant from the necessity of trial to establish the fact.

*Id.* at 51-52.

The Tribe, echoing the company in *Myers*, claims that it cannot be required to exhaust administrative remedies because it would cause the Tribe to suffer irreparable harm.  Whereas the plaintiff in *Myers* complained of irreparable damage, *inter alia*, to its constitutional rights, the alleged irreparable harm here is injury to the Tribe's "sovereign authority" over its Casino gaming facilities.  (Compl. ¶ 37; Pl.'s Br. p. 10.)  The Court recognized that the sufferance of various harms—whether real or imagined, quantifiable or abstract—is an unavoidable consequence of any adjudicatory process.  *See also Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) (participating in administrative proceeding does not constitute irreparable harm).  The NLRB's congressionally-mandated administrative processes were also held to impose no irreparable harm to the First Amendment infringement claims made by the

Catholic Church in *Grutka,* 549 F.2d at 9 n.7; *see also Goethe House New York*, 869 F.2d 75

(NLRB administrative requirements do not impose irreparable harm on German Cultural Center

even though employer is substantially regulated by the German Government).

Further, although the NLRB acknowledges and respects the Tribe's interest in protecting

its tribal sovereignty, the abstract "harm" asserted here is minimal at best.  It cannot be

overemphasized: Agency proceedings are not coercive, and Board orders are not self-enforcing.

The NLRB has no ability to require the Tribe to modify its conduct without first obtaining a

decree granting enforcement of a Board order by a court of appeals.  *See Myers*, 303 U.S. at 48;

*Little River*, 747 F. Supp. 2d at 890.

To make its sovereignty defenses to the NLRB's jurisdiction, the Tribe need only follow

the course charted in *San Manuel Indian Bingo & Casino*, 341 NLRB 1055 (2004), *further

proceedings*, 345 NLRB 1047 (2005), *enf'd*, 475 F.3d 1306 (D.C. Cir. 2007), [8] and file a motion

to dismiss with the Board on jurisdictional grounds.  Even if the Board should reject the Tribe's

objection to NLRA jurisdiction over the Casino employees, like the San Manuel Band, the Tribe

will have an adequate opportunity to present those very same arguments to an appropriate circuit

court.  This relatively modest procedure, though undesirable to the Tribe, cannot reasonably be

characterized as causing "injury," let alone "irreparable injury," to tribal sovereignty warranting

enjoining the Board from initially deciding its own jurisdiction.  *See Myers*, 303 U.S. at 48 n.5.

The Tribe can not be considered harmed because the NLRB assertedly did not consult

with it before the General Counsel issued an administrative complaint.  Initially, Executive Order

13175, relied upon by the Tribe, does not require this Agency to engage in consultation, as the

---

[8] In that case, the San Manuel Tribe of Serrano Mission Indians, a California tribe, argued
unsuccessfully on Section 10(f) review of a final Board order in an unfair labor practice case that
the Board lacked jurisdiction over a casino wholly owned and operated by the tribe on its
reservation.  475 F. 3d at 1307-08.

Executive Order defines "Agency" to exclude "independent regulatory agencies," including the National Labor Relations Board. *See* Sec. 1(c) of Executive Order 13175; 44 U.S.C. § 3502(5). Nonetheless, the NLRB has a tradition of meeting with parties to discuss issues of mutual concern, and has met or offered to meet with tribes in the past. In this case, before the General Counsel issued complaint, the Tribe had repeatedly made clear to the Agency the Tribe's position contesting application of the NLRA to its Casino. That the General Counsel instead followed Board precedent in *San Manuel*, does not mean that there was no consideration of the Tribe's position.

The Tribe also cannot meet any of the other criteria necessary for a preliminary injunction – likelihood of success on the merits, that the balance of equities tips in the movant's favor, and that the injunction is in the public interest. *See Gonzales v. National Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). The Tribe can only be successful in this matter if this Court has subject matter jurisdiction to hear the matter and grant the requested relief. As shown, however, the Tribe can not demonstrate that the Court has jurisdiction. The Tribe, therefore, has no likelihood of success. The balance of equities factor is intertwined with the public interest consideration. The NLRB was created and empowered by Congress to initially adjudicate and where appropriate remedy unlawful labor practices which otherwise would interfere with interstate commerce. 29 U.S.C. §§ 151 & 160; *see U.A.W. Local 283 v. Scofield*, 382 U.S. 205, 220 (1965); *Vaca v. Sipes*, 386 U.S. 171, 182-83 n.8 (1967) ("The public interest in effectuating the polices of the federal labor laws, not the wrong done the individual employee, is always the Board's principal concern in fashioning unfair labor practice remedies."). Any injunction of the Board's consideration of alleged unfair labor practices would frustrate Congress's purposes, while requiring the Tribe to exhaust administrative remedies prior to

securing court review will result in no cognizable irreparable harm.  Accordingly, the balance of equities favors denial of injunctive relief.

IV.     The NLRB, as Sovereign, Is Immune From this Lawsuit

Finally, it is also settled that the "'United States, as sovereign, is immune from suit save as it consents to be sued.'"  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  The Supreme Court has noted that suits against the NLRB have been dismissed because they are against a federal agency exercising a governmental regulatory function and thus are suits against the United States, which cannot be sued without the consent of Congress.  *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 147 n.4 (1971) (citing *Clover Fork Coal Co. v. NLRB*, 107 F.2d 1009 (6th Cir.1939)).  *See also Rogers v. NLRB*, 2007 WL 656281, at *6 (E.D. Mich. Feb. 28, 2007).  Any waiver of sovereign immunity must be "unequivocally expressed" within the statute's language. *United States v. Nordic Village*, 503 U.S. 30, 33, 37 (1992).  There must be an "'unequivocal expression' of elimination of sovereign immunity . . . in the statutory text."  *Id*. at 37.  Further, any language that purportedly waives sovereign immunity "'must be construed strictly in favor of the sovereign,' … and not 'enlarge[d] … beyond what the language requires . . . .'"  *Id*. at 34. *See Ardestani v. INS*, 502 U.S. 129, 137 (1991).  Here, as discussed, the Tribe relies on Section 1331 and 1362.  Yet, "[i]t is well settled that pure jurisdictional statutes, such as Section[] 1331 [], 'may not be construed to constitute waivers of the federal government's defense of sovereign immunity.'"  *Raghavendra v. NLRB*, 2009 WL 5908013, at *9 (S.D.N.Y. Aug. 27, 2009).  *See also Paiute-Shoshone Indians v. Los Angeles*, 637 F.3d 993, 999-1000 (9th Cir. 2011) ("We decline Plaintiff's sweeping invitation to read § 1362 as waiving sovereign immunity over every action brought by an Indian tribe against the United States when the statute says nothing about either sovereign immunity or actions against the United States.").  Thus, because Congress did

not waive sovereign immunity, and the Tribe points to nothing stating otherwise, this Court may not entertain this suit against the NLRB. *United States v. Sherwood*, 312 U.S. 584, 586 (1983).

V.       This Court Should Not Adjudicate Whether the NLRA Applies to the Tribe

In light of the foregoing, this Court need not and should not consider the merits of the Tribe's contentions regarding the Agency's lack of jurisdiction over the Tribal Casino. The issue of whether the Board can exert jurisdiction over this Casino in light of the specific treaty and IGRA rights of this Tribe properly must be presented to and determined by the Board in the first instance. For that reason, and since the Board has not yet decided this case, the Board cannot now take a formal position on its jurisdiction over the Casino. Thus, in order to enjoin the unfair labor practice proceeding, this Court would be faced with the task of adjudicating the Agency's jurisdiction over the Casino before the Board makes its own determination in this case.

Moreover, the existence of Agency jurisdiction in the underlying unfair labor practice case is hardly as open-and-shut as the Tribe would have this Court conclude, and does not depend upon Tenth Circuit case law, as vigorously advocated by the Tribe. For this reason, the *Chickasaw* district court decision from Oklahoma relied upon by Plaintiff is not persuasive because it was a decision applying—inaccurately, we submit—Tenth Circuit law. *See Chickasaw Nation v. NLRB*, Case No. CIV-11-506-W (W.D. Okla. Aug. 2, 2011), *appeal pending*, Case No. 11-6209 (10th Cir. appeal filed Aug. 11, 2011).

The Supreme Court "has consistently declared that in passing the NLRA, Congress intended to and did vest in the Board the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause." *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226 (1963). The language of §2(2) of the Act "vests jurisdiction in the Board over any 'employer'

doing business in this country save those Congress excepted with careful particularity." *State Bank of India v. NLRB*, 808 F.2d 526, 531 (7th Cir. 1986).

Numerous circuits have concluded that general federal statutes that are silent as to their application to tribal entities may apply to such entities. Under the *Tuscarora/Coeur d'Alene*[9] framework upon which the Board relied in its *San Manuel* decision, a federal law of general applicability covers tribal entities unless "(1) the law touches exclusive rights of self-government in purely intramural matters; (2) the application of the law would abrogate treaty rights; or (3) there is proof in the statutory language or legislative history that Congress did not intend the law to apply to Indian tribes." *San Manuel*, 341 NLRB at 1059. These principles have been widely adopted to sustain the application of a number of employment and civil rights statutes. *See, e.g., Fla. Paraplegic Assn. v. Miccosukee Tribe of Indians*, 166 F.3d 1126, 1129-1130 (11th Cir. 1999) (ADA); *Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174, 177 (2d Cir. 1996) (OSHA); *Smart v. State Farm Ins. Co.*, 868 F.2d 929, 932 (7th Cir. 1989) (ERISA); *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1115 (9th Cir. 1985) (OSHA).

The Tribe cites as "controlling or most appropriate authority" *only* Tenth Circuit cases – law representing the minority view when compared to all the other Circuits to weigh in on the issue. (Pl.'s Br. p. ii.) *Little River*, decided last September by the District Court for the Western District of Michigan, applied *Myers* to a similar case and explained that *Tuscarora/Coeur d'Alene* is the generally acceptable standard that courts follow. *See Little River*, 747 F. Supp. 2d at 888.

In addition, as even the Tenth Circuit noted as recently as 2002, it has yet to adjudicate whether the NLRA applies to Indian tribes: "[w]e begin by noting what the district court also

---

[9] *Fed. Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 116 (1960); *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113 (9th Cir. 1985).

took pains to point out, namely, that the general applicability of federal labor law is not at issue.

Furthermore, the Pueblo does not challenge the supremacy of federal law." *NLRB v. Pueblo of*

*San Juan*, 276 F.3d 1186, 1191 (10th Cir. 2002) (internal citations omitted) (holding that the

NLRA does not preclude the Pueblo from enacting a right-to-work ordinance similar to those

permitted by the NLRA to be enacted by the several states); *see also NLRB v. Fortune Bay*

*Resort Casino*, 688 F. Supp. 2d 858, 862, 869 (D. Minn. 2010) (enforcing a subpoena against

Bois Forte Band of Chippewa Indians' casino because it was at best "unclear . . . whether the

NLRA [adversely] affects rights specifically reserved to the Band").

 Moreover, the Tenth Circuit has relied upon *Tuscarora/Coeur d'Alene* as recently as

1989.  *See Nero v. Cherokee Nation of Okla.*, 892 F.2d 1457, 1462-63 (10th Cir.).  To the extent

*Dobbs v. Anthem Blue Cross and Blue Shield*, 600 F.3d 1275 (10th Cir. 2010), recognizes that

"[a]pplying certain federal regulatory schemes to Indian tribes would impinge upon their

sovereignty," *id.* at 1284, the same court stated that federal statutes of general applicability apply

to tribal governments when they exercise property rights, *id.* at 1284 n.8, rather than their

authority as a sovereign.  The Tenth Circuit reiterated the distinction in *Pueblo of San Juan*,

where it found *Tuscarora* applicable to situations where tribes act "*in a proprietary capacity*

*such as that of employer or landowner*."  276 F.3d at 1199 (emphasis added).  Moreover, as the

D.C. Circuit stated in *San Manuel*, "the Supreme Court's decisions reflect an earnest concern for

maintaining tribal sovereignty, but they also recognize that tribal governments engage in a varied

range of activities many of which are not activities we normally associate with governance."  475

F.3d at 1314.  In short, the question is far from clear even in the Tenth Circuit, and other Circuits

that have considered the issue do not bar generally applicable statutes like the NLRA from

reaching Indian tribes.  In any event, this question should not be reached here, as the Tribe has

clearly failed to exhaust its administrative remedies pursuant to Section 10(f) and *Myers*.

## CONCLUSION

In the end, "neither the National Labor Relations Act itself, nor any authoritative

legislative history, . . . nor any other Supreme Court decision, either commands or authorizes the

delay inherent in District Court review" of NLRB unfair labor practice cases.  *Blue Cross & Blue*

*Shield of Mich. v. NLRB*, 609 F.2d 240, 244 (6th Cir. 1979).  The suit fails for lack of jurisdiction

and because Congress has not consented that the NLRB be sued in these circumstances.

Respectfully submitted,

DENNIS BOREN (MI No. P28524)  
Regional Attorney  
477 Michigan Avenue, Room 300  
Detroit, MI 48226-2569  
(313) 226-3230  
Dennis.Boren@nlrb.gov  

ERIC G. MOSKOWITZ  (DC No. 184614)  
National Labor Relations Board  
Assistant General Counsel  
Special Litigation Branch  
National Labor Relations Board  
1099 14th Street, N.W.  
Washington, D.C. 20570  
(202) 273-2931  
Eric.Moskowitz@nlrb.gov  

/s/NANCY E. KESSLER PLATT (DC No. 425995)  
Supervisory Attorney, Special Litigation Branch  
(202) 273-2937  
Nancy.Platt@nlrb.gov  

MARK G. ESKENAZI  (NY No. 4655619)  
Attorney, Special Litigation Branch  
(202) 273-1947  
Mark.Eskenazi@nlrb.gov  

Dated:      Washington, D.C.  
           October 28, 2011

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SAGINAW CHIPPEWA INDIAN<br>TRIBE OF MICHIGAN,<br><br>        Plaintiff,<br><br>    v.<br><br>NATIONAL LABOR RELATIONS BOARD<br>and in their official capacities as Members of<br>the Board, MARK G. PEARCE, Chairman,<br>CRAIG BECKER, and BRIAN HAYES.<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 11-cv-14652<br><br>Honorable Thomas<br>Ludington<br><br>Magistrate Judge<br>Charles E. Binder |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 28, 2011, I electronically filed Defendants' Motion to Dismiss and Brief in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction and in Opposition to Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction with the Clerk of the Court using the ECF system, which will send notification of this filing to the following:

William A. Szotkowksi, attorney for Plaintiff

/s/NANCY E. KESSLER PLATT (DC No. 425995)
Supervisory Attorney, Special Litigation Branch
National Labor Relations Board
1099 14th Street, N.W.
Washington, D.C. 20570
(202) 273-2937
Nancy.Platt@nlrb.gov