UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SAGINAW CHIPPEWA INDIAN TRIBE OF MICHIGAN,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL LABOR RELATIONS BOARD and in their official capacities as Members of the Board, MARK G. PEARCE, Chairman, CRAIG BECKER, and BRIAN HAYES.<br><br>    Defendants. | Case No. 11-cv-14652<br><br>Honorable Thomas L. Ludington<br><br>Magistrate Judge Charles E. Binder |

**DEFENDANTS' BRIEF IN REPLY TO
PLAINTIFF'S COMBINED RESPONSE AND REPLY**

Defendants National Labor Relations Board, et al. ("NLRB" or "the Board") submit this Reply in support of their Motion to Dismiss for Lack of Jurisdiction, and in response to the Tribe's Combined Response and Reply ("Tribe Resp."). The Tribe's derisive tone notwithstanding, there is no merit either to its argument that this Court has jurisdiction to enjoin the NLRB's unfair labor practice proceeding, or that it will suffer irreparable harm merely from making legal argument first to the Board before securing Circuit Court review.

1. The Tribe relies heavily upon mistaken claims of deficiencies in the NLRA administrative and judicial review procedures. Those claims are based upon incorrect and unsupported assertions about the procedures established by Congress.

a. The Tribe's cries of "[s]entence first – verdict afterwards" and "cart before the horse" (Tribe Resp. at 1) have no relevance here. Any "sentence" requiring the Tribe's Casino to comply with the NLRA can be imposed *only after* the Tribe obtains judicial review in a Court of Appeals, *if* and when the Board decides to assert jurisdiction over it. NLRB proceedings are not coercive. Board orders are not self-enforcing. Contrary to the Tribe's repeated assertions (Tribe Resp. at 6-8), the NLRB proceeding can cause no "compelled violation" of the Tribe's rights under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721 to govern its Casino or its treaty rights to exclude unwanted nonmembers (Tribe Resp. at 21-22). The NLRB has no ability to require the Tribe to do anything without first obtaining Circuit Court enforcement. *See Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 48 (1938).

b. As a matter of law, the Tribe suffers no "root canal" (Tribe Resp. at 22) – or other irreparable harm – by adhering to the same statutory procedures all entities must follow, even those alleging that the NLRB acted in excess of its authority and outside constitutional bounds. *Myers*, 303 U.S. at 51 ("the rule requiring exhaustion . . . cannot be circumvented by asserting

1

that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage"). *See also Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1947). The Tribe's complaint of harm by participating in the Board's proceeding "has been rejected numerous times, most notably in *Myers* itself." *Little River Band of Ottawa Indians v. NLRB*, 747 F. Supp. 2d 872, 889 (W.D. Mich. 2010). Its desire to create a "full and complete record" in *this* Court is simply misplaced (Tribe Resp. at 1). Any record must appropriately be made in the Board proceeding. *After* a final Board order issues, "[w]hether on the record as a whole there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the Courts of Appeals." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490-91 (1951).

    c. There is no merit to the Tribe's claim that its litigation needs can not be accommodated by the Board proceeding and circuit review. According to the Tribe: the "Board's proceeding has no room for proof that treaties reserved economic-development rights and self-governance rights broad enough to evolve alongside" societal progress (Tribe Resp. at 10); and Circuit review will be "hollow because that review will be on an undeveloped record focused on inapposite law and with an unfavorable standard of review" (*id*. at 11). The administrative record will contain whatever records, testimony, and legal argument the Tribe submits. Those proceedings are conducted pursuant to the Board's Rules and Regulations, 29 C.F.R. §§ 102.24-50, which provide for a full evidentiary proceeding, with parties permitted to introduce all normal forms of evidence and argument. *Detroit Newspaper Agency v. NLRB*, 286 F.3d 391, 400 (6th Cir. 2002) (quoting *Myers*) ("We construe the procedural provisions as affording adequate opportunity to secure judicial protection against arbitrary action in accordance with well-settled rules applicable to administrative agencies . . . ."). While the

Administrative Law Judge (ALJ) and the Board are not tribal law experts, the Tribe's lawyers can seek to educate them, and if they rule against the Tribe, a Circuit Court will hear the Tribe's appeal. On matters of Tribal law, which the Tribe claims to be so clear, there will be no deferential standard on appeal. That the Band in *San Manuel Indian Bingo & Casino v. NLRB*, 475 F.3d 1306 (D.C. Cir. 2007) failed to convince either the Board or Circuit of its sovereign immunity from the NLRA, is not – as this Tribe suggests – evidence of inappropriate bias in the proceedings.[1]

    2. The "well-steeped" *Myers* rule does not fall away where a party raises IGRA or treaty claims. *See Detroit Newspaper*, 286 F.3d at 401. In other contexts, 28 U.S.C. § 1331 may provide subject matter jurisdiction for a claim for injury of specific rights granted by IGRA or a treaty. *E.g., Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 47 (1996) (IGRA authorizes a tribe to bring suit in federal court against a State in order to compel the State's duty to negotiate in good faith for a compact). But the only "claim" the Tribe raises "under IGRA" is to enjoin the NLRB from continuing its administrative proceeding.[2]

---

[1] The Tribe also errs in relying upon the January 15, 2009 letter of the Solicitor of the Department of Interior (Tribe Resp. at 16 n.89). While disagreeing with the position of the Board's General Counsel in the case involving the Little River Band of Ottawa Indians, the Solicitor there chose not to join the Little River Band in its unsuccessful suit to enjoin the NLRB proceeding. Instead, the Solicitor reasonably obtained permission to and will participate in the briefing of that unfair labor practice case before the Board, giving due respect for the review process established by Congress.

[2] None of the cases the Tribe cites as providing federal question jurisdiction under IGRA are analogous to the case at hand. Tribe Resp. at n.47. Those cases concern the validity of Tribal-State gaming compacts and an allegation that tribes conducted gambling in violation of federal and state law, *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1548 (10th Cir. 1997), the breach of an agreement that incorporated IGRA provisions and regulations, *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians Florida*, 63 F3d 1030, 1047 (11th Cir. 1995), and a contention that IGRA preempts state law regulating gaming, *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 542-43 (8th Cir. 1986). In any event, as noted, the NLRB could not "compel[] violation" of IGRA (Tribe Resp. at 6, 8), because the NLRB can not compel the Tribe to do *anything*. *Myers*, 303 U.S. at 48.

3

In any event, while IGRA allows tribes and states to regulate gaming, "it is a considerable leap from that bare fact to the conclusion that Congress intended federal agencies to have no role in regulating employment issues that arise in the context of tribal gaming." *San Manuel*, 475 F.3d at 1318. Indeed, one of the only three reasons the Secretary of the Interior may disapprove a tribal-state compact under IGRA is if the compact violates "any other provision of Federal law that does not relate to jurisdiction over gaming on Indian lands." 25 U.S.C. § 2710(d)(8)(B). This provision strongly suggests that IGRA was not intended to frustrate the application of other federal laws.

Nor does the Tribe's reliance on its treaties provide this Court with jurisdiction. Any such defense to application of the NLRA will be ultimately adjudicated by a Circuit Court. Moreover, as the Board has not asserted jurisdiction, there can be no claim of abrogation of a treaty right. While the Board has not adjudicated this issue, we note that the 1864 treaty grants the Tribe "exclusive use" of certain land in Isabella County. ECF No. 5-9. "[G]eneral treaty language," "such as that devoting land to a tribe's 'exclusive use' is not sufficient" to preclude application of federal law. *United States v. Farris*, 624 F.2d 890, 893 (9th Cir. 1980).[3]

More generally, the Tribe errs in asserting that "the circuits are split" on the question of the Board's assertion of jurisdiction over tribes (Tribe Resp. at 20). The D.C. Circuit is the *only* Circuit to address that question, upholding the Board's decision to exercise jurisdiction over an

---

[3] *See also Solis v. Matheson*, 563 F.3d 425, 428, 435, 437 (9th Cir. 2009); *Smart v. State Farm Ins. Co.*, 868 F.2d 929, 934-35 (7th Cir. 1989). The Tribe also relies upon the inherent right to tribal self-governance. However, "the Supreme Court's decisions . . . recognize that tribal governments engage in a varied range of activities many of which are not activities we normally associate with governance. These activities include . . . commercial enterprises that tend to blur any distinction between the tribal government and a private corporation. . . . [I]mpairment of tribal sovereignty is negligible in this context, as the Tribe's activity was primarily commercial and its enactment of labor legislation and its execution of a gaming compact were ancillary to that commercial activity." *San Manuel*, 475 F.3d at 1314-15.

Indian tribe's casino. *San Manuel,* 475 F.3d at 1315-16, 1318. And, contrary to the Tribe's assertions, the *Tuscarora/Coeur d'Alene* framework for application of federal laws to tribes (with exceptions), is the generally accepted framework that courts follow. *See Little River*, 747 F. Supp. 2d at 888.[4] Whether an Indian tribe can circumvent *Myers* and proceed directly in District Court is a question to which *no* Circuit court has spoken, but to which the Western District of Michigan in *Little River* recently answered in the negative.[5]

     3. The very narrow exception to the rule of nonreviewability established in *Leedom v. Kyne*, 358 U.S. 184 (1958) is inapposite. To secure district court review under *Leedom*, a plaintiff must show *both* that the Agency is clearly acting in violation of a specific, mandatory provision of the NLRA, 358 U.S. at 188-89,[6] *and* that there is no alternative opportunity for review of the Agency's action. *Id.* at 190; *Bd. of Governors of the Fed. Reserve Sys. v. MCorp*

---

[4] In its Response, the Tribe asserts as "controlling or most appropriate authority" an inapposite Supreme Court case, *United States v. Dion*, 476 U.S. 734, 737-40 (1986), which held that the Eagle Protection Act abrogated certain Indian treaty rights to hunt and fish on lands reserved to tribes. Nothing in *Dion* speaks to whether a tribe can avoid Congressionally defined avenues for court review of administrative proceedings. There was simply no administrative proceeding involved and certainly none enjoined. There was never any question that the dispute should first be resolved in district court.

[5] *That* question is now before the Tenth Circuit as a matter of first impression in *Chickasaw Nation v. NLRB*, where the Board contends that the District Court erroneously ignored *Myers* and circuit precedent barring charged parties in NLRA proceedings from bypassing Congress's review process. Case No. CIV-11-506-W (W.D. Okla. July 11, 2011), *appeal pending*, Case No. 11-6209 (10th Cir. appeal filed Aug. 11, 2011). Distinguishing *Myers* based upon the plaintiff's asserted unique status is contrary to decades of precedent. *E.g., Detroit Newspaper*, 286 F.3d at 400 ("Upon [federal appellate] review *all questions* of the jurisdiction of the Board and the regularity of its proceedings, all questions of constitutional right or statutory authority are open to examination by the court . . . .") (emphasis added) (quoting *Myers*, 303 U.S. at 49).

[6] In *Leedom*, the Board conceded that it had acted contrary to a express command of the NLRA, Section 9(b)(1), which prohibits inclusion in a single bargaining unit of both professional and non-professional employees without first conducting a vote to determine if the professionals wish to be included in such a unit. Here, the Board can hardly be accused of clearly violating any law where a Court of Appeals has squarely *upheld* the Board's decision to apply the NLRA to an Indian tribal government operating a casino. *San Manuel*, 475 F.3d at 1315-16, 1318.

*Financial, Inc.*, 502 U.S. 32, 43 (1991); *Blue Cross & Blue Shield of Mich. v. NLRB*, 609 F.2d 240, 243 (6th Cir. 1979). The Tribe can not demonstrate either factor. The Tribe has not even claimed that a NLRA provision has been violated. In any event, there is no "sacrifice or obliteration" of a statutory right where as here "a meaningful and adequate opportunity for judicial review" is available. *MCorp.*, 502 U.S. at 43.[7]

    4. The Tribe similarly gains no support from *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 21 (1963) (Tribe Resp. at 13-15), a representation proceeding involving potential "international discord." There, the Supreme Court held that a district court had jurisdiction to enjoin an NLRB-ordered representation election involving foreign seamen, who were already represented by a foreign union on shipping vessels owned by a Honduran company. Although three certiorari petitions were involved, including one filed by the Honduran company, the Supreme Court only reached the merits with respect to the petition filed by the foreign union, which was not a party to the Board's proceeding and could not secure judicial review through the normal procedures set forth in the NLRA. *See* 372 U.S. at 16.

    It was on this basis that the Second Circuit distinguished *McCulloch* in *Goethe House New York, German Cultural Center v. NLRB*, 869 F.2d 75 (2d Cir. 1989). In that case, a New York company that was substantially regulated by the German government invoked *McCulloch* as a basis for enjoining the NLRB from holding a representation election at the company's facility. The Second Circuit rejected application of *McCulloch,* reasoning:

> In *McCulloch,* the Supreme Court took appeals from two related cases, one initiated in district court by an employer and one initiated by a union. The Court decided to adjudicate only the union-initiated case, and declined to rule on

---

[7] *See Detroit Newspaper*, 286 F.3d at 391 (Court "rested its decision in *MCorp* solely on the basis that MCorp had available to it review in the appellate courts, thus making district court jurisdiction improper under *Leedom*"). *See also Boire v. Greyhound Corp.*, 376 U.S. 473, 477 (1964); *AMERCO v. NLRB*, 458 F.3d 883, 890 (9th Cir. 2006).

6

> whether the district court had jurisdiction in the employer-initiated case. We believe it significant that the Court's holding in *McCulloch*, as in [*Leedom*], that the district court had jurisdiction, applied to the union-initiated case. Here, since Goethe House is an employer and can seek indirect review, there was no warrant for the district court to assert jurisdiction.

869 F.2d at 80 (citations omitted). Of course, while Goethe House could only seek indirect review of the representation case result, the Tribe can secure direct and immediate review of a final Board order in the pending unfair labor practice proceeding. Significantly, *McCulloch* also has no application here because this case does not involve international relations. *See* 372 U.S. at 21.[8] "The Supreme Court has consistently characterized Indian tribes as domestic dependent nations, subject to the paramount authority of the federal government," *Chickasaw Nation v. United States*, 208 F.3d 871, 884-85 (10th Cir. 2000) (quotes and citations omitted), and the Tribe concedes as much (Tribe Resp. at 15). Its interests thus occupy a substantively different position than those of the Republic of Honduras in *McCulloch*. *See Goethe House*, 869 F.2d at 79 ("disturbances and embarrassment in international relations" would not result from NLRB's assertion of jurisdiction); *see also Nat'l Farm. Union Ins. v. Crow Tribe*, 471 U.S. 845, n.14 (1985) ("[Indian tribes] cannot enter into direct commercial or governmental relations with foreign nations.") (internal citation omitted).[9]

    5. The Board's prior denial of review of a Regional Director's Decision and Direction of Election, which enabled the Region to hold an election in a representation case, shows no "irretrievabl[e] bias" (Tribe Resp. at 17). The denial is akin to the Supreme Court's denial of a

---

[8] There is no merit to the Tribe's apparent assertion that correspondence between the Department of Interior and the NLRB General Counsel's Office is analogous to the potential international conflict recognized in *McCulloch* (Tribe Resp. at 16 n.89).

[9] Although the Tribe cites *National Farmers* as a case providing federal question jurisdiction under federal common law, as we previously explained (NLRB Br. at 13), that case stands for respect given to exhaustion principles, there before a Tribal Court. 471 U.S. at 855-56. There is no right to district court jurisdiction here, where the NLRA precludes it.

request for certiorari, and thus, the Board has not yet actually ruled on jurisdiction over this Casino, or any case involving an Indian treaty. *See Magnesium Casting Co. v. NLRB*, 401 U.S. 137, 142 (1971) (affirming the Board's Section 3(b) authority to delegate adjudication of pre-election disputes to its Regional Directors and further affirming "the fact that the Board has only discretionary review of the determination of the regional director . . . .").[10]  In any event, just as a court can rule on an issue and be presented with the same issue in a subsequent case, that is hardly a basis for a claim of bias against the forum.  The Tribe inexplicably seems to equate binding precedent (which does not exist here) with bias.  The Tribe's assertion that requiring it to litigate the current administrative case would be "inappropriate and unnecessary" is "without foundation in the jurisprudence," *Detroit Newspaper*, 286 F.3d at 401, for such is the course prescribed by statute.  Whether the particular issues before the Board are only NLRA issues or NLRA issues intertwined with tribal issues, the prescribed procedure for review is the same.  *Cf. Aircraft & Diesel Equipment Corp. v. Hirsch*, 331 U.S. 752, 758-59 n.12, 772-74 (administrative exhaustion required for constitutional claims, including alleged due process violations).[11]

      6.  Sovereign immunity "extends to agencies of the United States" *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993), which are "immune[e] from suit [] whatever the character of the proceeding or the source of the right sought to be enforced," *Coleman v. United*

---

[10] The Teamsters union involved in the prior representation case involving the Casino lost the election.  Had the Teamsters *prevailed* in the election, the Tribe could have refused to bargain, prompting the Teamsters to file an unfair labor practice charge over that failure to bargain.  The Tribe thus could have obtained review from an ALJ, the Board, and a Court of Appeals. *Boire*, 376 U.S. at 477.

[11] The Tribe erroneously relies on *McCarthy v. Madigan*, 503 U.S. 140 (1992) for the proposition that exhaustion is inappropriate here (Tribe Resp. at 17).  In that case, concerning a federal prisoner's money damage claims, Congress did not require administrative exhaustion. *Id.* at 149, 152.  Here, Congress, in Section 10(f), has required exhaustion, and has not foreclosed the judicial relief sought by the Tribe; it has just delayed it.

*States*, 100 F.2d 903, 905 (6th Cir. 1939). *See also NLRB v. Nash-Finch Co.*, 404 U.S. 138, 147 n.4 (1971); *Kozak v. U.S. Dep't of Navy*, 2005 WL 2206155, at *2-3 (E.D. Mich. Sept. 12, 2005). The Tribe does not contend that Congress consented to the present suit.[12]

Two narrow exceptions to an agency's immunity are not applicable here. A federal officer's action "can be regarded as so 'illegal' as to permit a suit . . . against the officer as an individual only if it is not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void." *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 701-02 (1949).

No action of the Board is alleged to be, nor is, constitutionally improper. Further, no Board agent can be considered to have acted outside the bounds of the NLRA, where the only Circuit to address the issue upheld the Board's exercise of jurisdiction over a tribal casino. *See San Manuel*, 475 F.3d at 1315-16, 1318. Because Congress has not consented that the Tribe sue the NLRB, this action must be dismissed.

7. Finally, contrary to the Tribe's characterization of the NLRA as a "gap-filling" statute (Tribe Resp. at 23), Congress saw fit to accord rights to employees in this country in order to "eliminate the causes of certain substantial obstructions to the free flow of commerce" by "encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing . . . ." 29 U.S.C. § 151. While the Tribe is correct that its treaties of 1855 and 1864 pre-date enactment of the NLRA in 1935, it remains that the Supreme Court adjudged

---

[12] *Ex parte Young*, 209 U.S. 123 (1908), cited by the Tribe, is inapplicable here. *Ex parte Young* permits, in certain circumstances, lawsuits against *state*, not federal, officials, thereby avoiding an Eleventh Amendment bar to sue a State. *See Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 642-44 (2001).

the NLRA constitutional,[13] and Congress has twice amended it significantly to *improve* – not erase – its functioning.[14]  Such functioning may include according rights to individual employees at the Casino (*see San Manuel*, 475 F.3d at 1315-16, 1318).  While the Tribe may be empowered to bar a person's access to its reservation, that is not what it has done here.  Rather, it has invited many non-tribal members to perform services at the Casino critical to its operation.  Whether those employees are entitled to the same labor law protections as other American workers is a question that must first be presented to the NLRB and not this Court.

                                              Respectfully submitted,

                                              ERIC G. MOSKOWITZ (DC No. 184614)
Assistant General Counsel, Special Litigation
National Labor Relations Board
1099 14th Street, N.W.
Washington, D.C. 20570
(202) 273-2931
Eric.Moskowitz@nlrb.gov

NANCY E. KESSLER PLATT (DC No. 425995)
Supervisory Attorney, Special Litigation Branch
(202) 273-2937
Nancy.Platt@nlrb.gov

/s/MARK G. ESKENAZI (NY No. 4655619)
Attorney, Special Litigation Branch
National Labor Relations Board
1099 14th Street, N.W.
Washington, D.C. 20570
Phone: (202) 273-1947

Dated: December 5, 2011      Fax: (202) 273-1799
      Washington, D.C.        Mark.Eskenazi@nlrb.gov

---

[13] *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 46-47 (1937).

[14] *See* Labor-Management Relations (Taft–Hartley) Act, Pub. L. 80-101, 61 Stat. 136, June 23, 1947); Labor Management Reporting and Disclosure (Landrum-Griffin) Act of 1959**,** Pub. L. 86-257, 73 Stat. 519, Sept. 14, 1959.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE SAGINAW CHIPPEWA INDIAN TRIBE OF MICHIGAN,<br><br>       Plaintiff,<br><br>    v.<br><br>NATIONAL LABOR RELATIONS BOARD and in their official capacities as Members of the Board, MARK G. PEARCE, Chairman, CRAIG BECKER, and BRIAN HAYES.<br><br>       Defendants. | Case No. 11-cv-14652<br><br>Honorable Thomas L. Ludington<br><br>Magistrate Judge Charles E. Binder |

CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2011, I electronically filed Defendants' Brief in Reply to Plaintiff's Combined Response and Reply with the Clerk of the Court using the ECF system, which will send notification of this filing to the following:

William A. Szotkowksi, attorney for Plaintiff
Andrew Adams III, attorney for Plaintiff
Jessica S. Intermill, attorney for Plaintiff
Sara K. Van Norman, attorney for Plaintiff

                /s/MARK G. ESKENAZI (NY No. 4655619)
                Attorney, Special Litigation Branch
                National Labor Relations Board
                1099 14th Street, N.W.
                Washington, D.C. 20570
                Phone: (202) 273-1947
                Fax: (202) 273-1799
                Mark.Eskenazi@nlrb.gov